Opinion by
 

 Keller, P. J.,
 

 By agreement of the parties this action in assumpsit was tried by a judge without a jury under the Act of April 22, 1874, P. L. 109. His findings of fact, if supported by the evidence, have the effect of the verdict of a jury.
 

 The action was based on a written contract, which was entered into under the following circumstances.
 

 The defendant, Coleraine Colliery Company was the owner of a tract of coal land in Banks Township, Carbon County, Pennsylvania. On October 19, 1932, it leased part of these premises with the stripping and mining rights to E. D. Ames, who, on October 31, 1932, assigned the lease to Ames Coal Company. The lessee erected on the leased premises an improvement known as the “small breaker,” but in January 1933, closed down the operation.
 

 On September 18, 1934 Coleraine Colliery Company entered into the agreement in suit with Ames Coal Company. It provided for the surrender and cancellation of the lease abovementioned and for the purchase by the former of the improvements erected by the latter, and set forth the contemplated execution by Coleraine Colliery Company, on the same date, of a lease to W. S. Jermyn, Trustee, for not only the stripping and mining of coal on the premises embraced in the Ames lease, but all other coal on the property of Coleraine Colliery Company aforesaid. The price of the improvements was fixed at $20,000, which was to be paid by Coleraine Colliery Company to R. L. Ames, as trustee for Ames Coal Company, in manner following: “Seven thousand
 
 *289
 
 five hundred dollars ($7,500) upon the execution of this agreement, out of which there is to be deducted all labor claims due and owing by E. D. Ames or the Ames Coal Company, so that the property leased to W. S. Jermyn, Trustee, may be worked immediately, and the balance in cash, for which a check is to be paid forthwith. The balance of the improvements, to wit, Twelve thousand five hundred dollars ($12,500), is to be paid monthly by the Coleraine Colliery Company to the Ames Coal Company, by an equal division of the monthly royalties and minimums received by the Coleraine Colliery Company from the Lessee, W. S. Jermyn, Trustee, or his assigns.”
 

 It further provided in the next paragraph — the third — that “After the said sum of $20,000 is paid by Coleraine Colliery Company to R. L. Ames, Trustee for Ames Coal Company, in the manner herein set forth in Paragraph Second, then the Royalties received by the Coleraine Colliery Company from the stripping and mining operations in the territory leased originally to E. D. Ames and assigned by him to the Ames Coal Company, is to be divided equally between the Coleraine Colliery Company and the Ames Coal Company, until the said stripping and mining territory embraced in the lease surrendered by the Ames Coal Company is mined out.” It also embraced other provisions not material in this case.
 

 The plaintiffs, in their statement of claim, averred, and the defendant, in its affidavit of defense, admitted that “The defendant paid to said [plaintiff] Trustee the sum of Seventy-five hundred dollars upon the execution of the agreement, out of which there was deducted labor claims due and owing by E. D. Ames or the Ames Coal Company, in accordance with the terms of the agreement.”
 

 It was immaterial to Ames Coal Company, where Coleraine Colliery Company got the $7,500 cash, which
 
 *290
 
 the latter was to make as an initial payment on the improvements — out of which Coleraine Colliery Company was first of all to deduct and pay all the labor claims due and owing by E. D. Ames or Ames Coal Company. It made no difference to the payee whether it would be paid out of money which the Coleraine Colliery Company had on hand or from money borrowed by it. The payments made to it under the agreement could not be affected by that circumstance. As a matter of fact the money, together with $8,500 more obtained and used by Coleraine Colliery Company, making a total of $16,000, was obtained by Coleraine Colliery Company from the new lessee, W. S. Jermyn, Trustee, by way of “advanced royalties for coal to be produced and mined” under the lease. The new lease called for the payment by the lessee of a flat royalty of fifty cents per ton, for all sizes of coal, and “a minimum amount cash rental of $12,000, payable in instalments aggregating in each year an average monthly payment of not less than $1,000 each” with provisions for subsequently mining, without payment of royalty, sufficient coal to make up any excess paid by way of minimum rental over the coal actually mined. The lessee was given the right to “absorb the advanced royalties of $16,000 in the following manner: Every third ton mined from the property is to have a credit against the advanced royalties of $16,000 ...... until the $16,000 is absorbed.”
 

 • The contract in suit provided, also, that in the event the new Jermyn lease was surrendered or forfeited, the Ames Coal Company would be reinstated in a lease for the territory included in the lease of October 19, 1932 to E. D. Ames, and assigned by him to Ames Coal Company subject to the terms, conditions and stipulations of said lease.
 

 The point really in dispute in this case is whether the provision in the Jermyn lease for “absorbing” the ad
 
 *291
 
 vanced royalties of $16,000 paid by Jermyn to Coleraine Colliery Company, ($7,500 of which was used by the latter for the down payment to Ames Coal Company and the balance for its own purposes), by giving the lessee, Jermyn, the right to have every third ton mined from the property credited against said advanced royalties of $16,000, is to be construed so as to charge said third ton against Coleraine Colliery Company’s half of the royalty to be paid under the lease, or is to be charged against the royalty before there is any division between Ames Coal Company and Coleraine Colliery Company, which latter would, in effect, charge Ames Coal Company with one half of the $16,000 advanced to Coleraine Colliery Company by Jermyn in order to raise the money needed to pay Ames Coal Company $7,500, as well as $8,500 used by Coleraine Colliery Company for its own private purposes, and to that extent at least postpone the receipt of the $12,500 and subsequent royalties due it.
 

 We agree with the findings and conclusions of the court below. While the agreement in suit makes reference to the Jermyn lease in order to explain certain of its provisions, it does not incorporate it into the agreement to the extent that Ames Coal Company was called on or required to contribute any part of the money advanced by Jermyn to Coleraine Colliery Company by way of advanced royalties, in order to enable the latter to carry out its contract with Ames Coal Company, or to secure money needed for its own individual purposes. If in order to raise needed money, whether to pay Ames Coal Company or for any other purpose, Coleraine Colliery Company agreed that Jermyn should deduct one-third of all royalties payable under his lease and credit it to the $16,000 advanced by him to Coleraine Colliery Company, that one-third must be charged against the share or half of Coleraine Colliery Company until Jermyn has been repaid $16,000,
 
 *292
 
 leaving the royalties received by Coleraine Colliery Company from Jermyn after crediting every third ton as aforesaid, payable three-fourths to Ames Coal Company and one-fourth payable to Coleraine Colliery Company, instead of equally as claimed by appellant, until Ames Coal Company has received $12,500. Thereafter Ames Coal Company will be entitled to only its share of the royalty accruing from the territory included in the Ames lease of October 19, 1932.
 

 This is concretely shown as follows: If Jermyn had not advanced money to Coleraine Colliery Company the royalty on six hundred tons, ($300), would have been divided, $150 to Coleraine Colliery Company and $150 to Ames Coal Company. The provision in the lease to Jermyn authorizing him to credit every third ton against the money given by him to Coleraine Colliery Company as advanced royalties would allow him to retain the royalty on two hundred tons, $100, but the remaining royalty, $200, would be divisible, $150 to Ames Coal Company and $50 to Coleraine Colliery Company, rather than $100 to each, for the $100 retained by Jermyn would be chargeable against the share of Coleraine Colliery Company, for whose benefit it was advanced and not jointly against Ames Coal Company and Coleraine Colliery Company.
 

 There is no merit in the other defenses or counterclaims. The alleged claims were found not to come within the provision of the contract which called for the deduction of “all labor claimsi due and owing by E. D. Ames or Ames Coal Company” from the first payment of $7,500. Money owing by E. D. Ames to officers of Coleraine Colliery Company on other accounts are not chargeable against Ames Coal Company and its trustee under the contract in suit. In making the first payment Coleraine Colliery Company deducted the labor claims payable under the contract. Other items, if any, due
 
 *293
 
 by E. D. Ames to officers of Coleraine Colliery Company were not covered by tbe agreement.
 

 There is ample evidence in tbe record to sustain tbe judge’s findings of fact, and tbe conclusions of law drawn from them are warranted from tbe facts so found.
 

 Tbe judgment is affirmed.